No. 28,988.

THOMAS EDMONDS, *Appellee*, v. THE FEDERAL SECURITIES COMPANY, THE UNITED POWER AND LIGHT CORPORATION OF KANSAS, WALTER E. WILSON, WILLIAM JACOBS, JR., CHARLES H. JOHNSON, FRED VOILAND, T. S. McQUEEN, B. B. DeMASTERS, H. G. WELCH and JOSEPH P. RUSSELL, *Appellants*.

(290 Pac. 3.)

Opinion filed July 5, 1930.

*A. L. Berger*, of Kansas City, and *G. B. Silverman*, of Kansas City, Mo., for the appellants.

*Thomas F. Doran, James Malone, Clayton E. Kline* and *M. F. Cosgrove*, all of Topeka, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: Under the provisions of R. S. 60-2821, the plaintiff filed a motion asking the court to strike the answer of the defendant Joseph P. Russell from the files and to enter judgment against him for his refusal to answer questions propounded to him in the taking of his deposition, and also for refusal to produce certain books and records. The motion of plaintiff was sustained, the answer of defendant Russell was stricken and judgment entered against him decreeing that defendant Russell return to the plaintiff certain certificates of the preferred stock of the United Power and Light

Corporation, or in lieu thereof that the corporation should cancel the certificates and issue new certificates to the plaintiff for the shares so ordered canceled. From this judgment defendant Russell appeals to this court.

The plaintiff in his petition charged all of the defendants except the United Power and Light Corporation with having entered into a conspiracy to cheat and defraud plaintiff by wrongfully and fraudulently obtaining from him 240 shares of the preferred stock of the United Power and Light Corporation. The defendants were jointly charged.

The defendant Russell filed his answer, alleging that he was a *bona fide* purchaser of seventy-nine shares of the preferred stock of the United Power and Light Corporation; that he had purchased them from the defendant Charles H. Johnson for $7,505; that in turn he sold thirty-nine shares of the stock and still retained forty shares, alleging he was a *bona fide* owner and holder of such shares.

Thereafter the plaintiff made three attempts to take the deposition of defendant Russell. Notices were served on three different occasions to take his deposition at Kansas City, Mo., subpœna was issued by a notary each time and served upon the defendant, and a *subpœna duces tecum* was also served upon him commanding him to produce his check book, bank book, check stubs and other records specified in the subpœna. The defendant appeared each time he was summoned to give his deposition. On one occasion he declined to answer questions or to produce records on account of the absence of his counsel. At the other times he appeared he answered some of the questions put to him, but each time he refused to produce his books and records. After the depositions had in each instance proceeded far enough to develop the fact that defendant Russell, according to his testimony, had purchased the seventy-nine shares of the preferred stock for $7,505, counsel for plaintiff on each occasion put to him the question, "Where did you get the money?" Questions of the same purport were put to him at the time of the taking of each deposition. He consistently refused to answer such questions, upon advice of his counsel. He took the position that so far as the plaintiff was concerned "it didn't make any difference," and that the question was impertinent. He did make a general statement in his deposition to the effect that he had not directly or indirectly obtained the money from any of the defendants in this case, but in no instance did he tell where he got the money. Now, the action against the defendant was one founded upon fraud. It charged him

as a coconspirator with other defendants. The only issue as between the plaintiff and the defendant was whether or not defendant Russell was an actual, *bona fide* owner of the stock. The defendant claimed he bought the stock, and named the amount he paid for it. Now, as bearing upon the question of his good faith, what could be more competent and relevant than the question, "Where did you get the money?" If the transaction were regular and made in due course of business there should have been no difficulty involved in defendant giving an answer to that question.

The case progressed to the point where it was set for trial on October 29, 1928, and thereupon all of the parties to the action, both the plaintiff and the defendants, appeared, except defendant Russell. Counsel for Russell appeared, and upon his request the case was continued as to Russell until November 26, 1928. Thereupon the case proceeded to trial as against all other defendants, and in open court all of the parties except Russell, through their counsel, waived a jury and announced that they did not desire to introduce any evidence. In open court they orally agreed that a judgment might be entered as set forth in the journal entry of judgment dated October 29, 1928. The court entered that judgment upon the oral agreement of all parties except the defendant Russell. The court made a finding that the forty shares of stock of which Russell claimed to be the *bona fide* owner and holder were in the possession of the defendant Federal Securities Company, and especially found that those particular certificates (designating them by number and the number of shares represented by each) were subject to the claim of defendant Russell, "that he is the *bona fide* owner and holder of said stock." The court specifically found that the issue as to whether or not defendant Russell was a *bona fide* owner and holder of the stock, "is to be determined upon trial of this case as against Joseph P. Russell on the 26th day of November, 1928." And further, "that if on said trial it should be determined that Joseph P. Russell is the *bona fide* owner and holder of the above certificates of preferred stock of the United Power and Light Corporation, then the court reserves jurisdiction to determine what further judgment should be made against the defendants."

On November 3, 1928, the plaintiff filed his motion to strike the answer of Russell from the files and also motion for judgment based upon the claim as set forth in the motion that the defendant Russell had refused on three different occasions to answer questions put to him in the taking of depositions and also to produce certain

documents and records under a *subpœna duces tecum* commanding him to produce them at the taking of the depositions. This motion was based on R. S. 60-2821, which reads:

"In any action now pending or hereafter instituted in any court of competent jurisdiction in this state, any party shall have the right to take the deposition of the adverse party, his agent or employee, and in case the adverse party is a joint-stock association, corporation or copartnership, then of any officer, director, agent or employee of any such joint-stock association, corporation or copartnership when such adverse party or officer, director, agent or employee of such adverse party is without the jurisdiction of the court or cannot be reached by the process of the trial court; and in case said adverse party, when duly served with notice of the taking of such deposition, as provided by the code of civil procedure for the taking of depositions, shall fail to appear at the place fixed in said notice, which place shall be in the city or county of the usual place of residence or place of. business of said witness, and testify and produce whatever books, papers and documents demanded by the party taking such deposition, or shall fail to produce at the time and place specified in such notice, such officer, director, agent or employee, the court before whom such action is pending may, upon application of the party seeking to take such deposition, and upon notice to the adverse party of such application, and upon hearing had to the trial court, strike the pleading of such adverse party from the files and render judgment in favor of the party so seeking to take such depositions, in whole or in part, as prayed for in his pleadings."

The motion came on for hearing on the same date, and in connection with the motion the plaintiff introduced all of the depositions which had been taken and the answers made by the defendant Russell in so far as he had given them.

It appeared from the statements of Russell, made in answer to questions, that he had purchased seventy-nine shares of the preferred stock from Charles H. Johnson, one of the defendants in this action; that he had given him in payment therefor a check for $7,505, and produced the canceled check. He consistently refused, however, to answer questions put to him as to the source from which he had obtained the money. Following the hearing of the motion and depositions introduced in evidence in support thereof the court inquired of counsel for defendant whether or not the defendant would be in attendance at the trial of the case in court, and received an affirmative answer. The court thereupon stated that he would take the motion under advisement and would dispose of it at the time the case was reached for trial on its merits. Following this the defendant Russell filed a lengthy statement, which is designated, "Suggestions of the defendant Joseph P. Russell in opposition to plaintiff's motion to strike the answer of defendant

Joseph P. Russell from the files, and suggestions against plaintiff's motion for judgment." This statement of the defendant set forth that Russell had purchased a total of seventy-nine shares of the preferred stock of the United Power and Light Corporation from Charles H. Johnson on January 7, 1927, and that he had sold thirty-nine shares and still retained ownership of forty shares, which he described by date and number of certificate and the number of shares represented by each. He set forth in his statement that on January 7, 1927, Charles H. Johnson was in the possession of the seventy-nine shares and delivered them to him in exchange for a check given by defendant for $7,505, which check was duly cashed and indorsed by Johnson at the bank upon which it was drawn. He set forth also that a photographic copy of the check was on file in court attached to the deposition of Russell; further, that he had presented the certificates acquired from Johnson to the United Power and Light Corporation for the purpose of having them transferred to himself and that thirty-nine shares had been transferred and disposed of, but that the United Power and Light Corporation had refused to transfer the remaining forty shares to the defendant Russell. His statement further claimed that he had in good faith answered the questions propounded to him at the taking of the depositions so far as they were proper; that the depositions showed that his answers were fairly given and he made the depositions a part of his statement as the same appeared on file in court. That his refusal to answer certain questions was upon the advice of counsel and was not willful; that he had at all times acted "as he believes under his legal rights as a constitutional citizen of the United States of America." He further claimed that R. S. 60-2821 had no application to the situation as it existed and as shown by the depositions.

The case finally came on for trial on February 20, 1929, as against defendant Russell. Prior to that date defendant Russell had filed a motion to set aside the judgment entered on October 29, 1928, which motion was by the court overruled on February 20, 1929. Following this the case came on for trial on that date. Counsel for defendant Russell was asked in open court whether or not the defendant Russell was present, and he stated, "He is not here to-day." Thereupon plaintiff, through his counsel, requested the court to pass upon plaintiff's motion to strike the answer of Russell from the files and motion for judgment before proceeding

further with the trial of the cause. This the court did, and made a finding that defendant Russell, being a nonresident of the state of Kansas, and without the jurisdiction of the trial court, and after having been twice duly served with notice of the taking of depositions, upon two separate occasions, as provided by the code of civil procedure for the taking of depositions, voluntarily appeared, but that on each occasion he refused to testify in answer to pertinent and material questions and refused to produce books and records demanded by the plaintiff. The court then made an order striking the answer of the defendant Russell from the files and entered judgment in favor of plaintiff, decreeing that plaintiff recover from defendant Russell the possession of the forty shares of the preferred stock in controversy. It set forth the numbers of the certificates and the number of shares represented by each, and further decreed that in the event defendant Russell should fail or refuse to deliver possession of the certificates, that then the United Power and Light Corporation should cancel the certificates described in the decree and issue new certificates to the plaintiff in lieu thereof for the forty shares and deliver them to plaintiff.

Among other things, defendant Russell urges that R. S. 60-2821, under which the court proceeded, is unconstitutional; that it is inconsistent with the constitution of the state of Kansas and the constitution of the United States. He wants to know, "What has become of this appellant's federal and state constitutional rights in the kingdom of Shawnee county, Kansas?" He calls our attention to part of section 2 of the bill of rights of the Kansas constitution which reads:

"No special privileges or immunities shall ever be granted by the legislature, which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency."

Section 18 of the bill of rights reads:

"All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

The appellant also calls attention to the "due process" clause in the fourteenth amendment to the constitution of the United States.

We have considered these constitutional questions urged in connection with the claim of appellant and find that the statute in question is not repugnant to the provisions mentioned. The legislature in its wisdom has seen fit to adopt R. S. 60-2821 as a means of facilitating litigation and as a proper step toward administering

"justice without delay." The section in question does not deprive the defendant of his right to have "due process of law." He is entitled to his day in court if he will abide by the code of procedure which our legislature has adopted for the guidance of our courts. This statute does not deprive him of his property without giving him an opportunity to come into court and be heard. It does impose upon him a penalty for refusal to comply with the provisions of the statute. The appellant had his own free choice in the matter. He could either comply with the statute or not as he saw fit. He elected not to comply, and the trial court chose to proceed in an orderly manner and entered judgment in accordance with the provisions of the statute.

The contentions of the appellant with reference to the constitutional questions raised are effectually disposed of in the case of *Hammond Packing Co. v. Arkansas*, 212 U. S. 322. In that case it was said:

"As the power to strike an answer out and enter a default conferred by § 9 of the act of 1905, which is before us, is clearly referable to the undoubted right of the lawmaking authority to create a presumption in respect to the want of foundation of an asserted defense against a defendant who suppresses or fails to produce evidence when legally called upon to give or produce, our opinion is that the contention that the section was repugnant to the constitution of the United States is without foundation." (p. 353.)

The appellant makes a contention to the effect that the district court erred in this, that after having stricken defendant's answer from the files the court proceeded to enter judgment without taking any proof or testimony.

What was the situation confronting the court? With the defendant's answer stricken from the files the petition of the plaintiff stood of record without a denial of its allegations. Under the provisions of R. S. 60-748, that "every material allegation of the petition not controverted by the answer . . . shall for the purpose of the action be taken as true," it is clear that the court assumed all of the allegations of the petition as being true. The allegations of the petition, under that situation, became facts so far as they purported to be allegations of fact. The trial court then had the facts before it as set forth in the petition, that the defendant, together with all the other defendants except the United Power and Light Corporation, had wrongfully and fraudulently obtained the stock in controversy from the plaintiff. Fraud on the part of the defendant then stood proved by the uncontroverted allegations of

the petition. That issue under the statute last noted was "taken as true." In addition to the foregoing the record shows that the depositions given by the defendant in so far as he had answered the questions were introduced in evidence by the plaintiff in support of his motion for judgment, and it further appears from the record that they were likewise placed before the court by the defendant as a part of the suggestions made to the court by the defendant in opposition to plaintiff's motion. In these suggestions so presented in opposition to the motion it further appeared that there was an admission on the part of the defendant that he had possession of the forty shares of stock concerning which the court rendered judgment—that in the written statement filed by him in opposition to the motion for judgment these shares of stock were described by the number of certificate and the number of shares represented by each certificate, and it appeared from this same statement that he had caused these forty shares to be presented to the defendant United Power and Light Corporation for transfer, and that such transfer of the forty shares had been refused. So as a matter of fact the court had before it ample evidence in the depositions given by the defendant and in the admissions made by the defendant in his suggestions in opposition to the motion of plaintiff asking that defendant's answer be stricken and that judgment be awarded against him. Taking into consideration the allegations in the petition which under the situation were deemed to be taken as true, and the evidence offered in support of plaintiff's motion and in opposition thereto, the court did have before it sufficient evidence upon which to base the judgment. It must be remembered that the relief sought against the defendant was not for damages. It was not a controversy over an unliquidated amount, but was an action for the recovery of specific property. The property involved in the controversy was forty shares of the preferred stock of the United Power and Light Corporation. No proof of their value was necessary. The allegations of fraud being deemed true and this being supplemented by the admissions of the defendant contained in his depositions and in his suggestions in opposition to the motion, the court very properly entered judgment based upon sufficient evidence.

The appellant contends the court erred in overruling his motion to set aside the judgment which was entered on October 29, 1928, in favor of plaintiff and against all the other defendants named in the decree who had been served with summons. We do not see how appellant has any ground to complain of the order of the trial court

overruling the motion directed to that judgment, because the court made it clear in the judgment itself that it in no way affected the appellant. The judgment did not attempt to determine any of the rights of the appellant, but made it plain that all issues as between the appellant and the plaintiff were to be tried at a later date. Under these circumstances the court very properly overruled the motion.

We have examined the other specifications of error urged by the appellant and find them without merit.

The judgment is affirmed.